UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 18 CR 828 |
| MICHAEL NAGEL | Hon. Andrea R. Wood |

### MICHAEL NAGEL'S MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE

Defendant, Michael Nagel, by his attorney, Ellen R. Domph, requests that the Court modify the conditions of supervised release, specifically that he no longer be required to submit to periodic polygraph examinations, and sex offender treatment/counseling. In support, and limited to the facts relevant for this motion, Mr. Nagel states as follows:

On April 11, 2016, Mr. Nagel began his supervised release after receiving 120 months in the Bureau of Prisons for Using a Facility and Means of Interstate Commerce to Induce a Person Under 18 years of Age to Engage in Sexual Activity in violation of 18 USC 2422(b). After prison he was placed on 5 years supervised release, which terminates on April 10, 2021.

In addition to multiple conditions of supervised release, Mr. Nagel must submit to periodic polygraph examinations, and attend sex offender treatment/counseling.

Mr. Nagel is now requesting that the condition that he submit to polygraph examinations and attend sex offender treatment/counseling be removed from the conditions of his supervised release for the reasons stated below.

**Polygraph Examination**

Mr. Nagel currently is required to submit to periodic polygraph examinations. Mr. Nagel, for a time, complied with polygraph examinations until he refused to allow the examination to be audio and video recorded. He was asked to sign a form agreeing or disagreeing to be recorded, although it appeared there was not really an option, because the polygrapher refused to proceed with the examination if he refused to sign the document agreeing to be recorded.[1] Consequently, this refusal was considered non-compliance and became the subject of a violation which is currently pending. Mr. Nagel in this pleading, however, asks this Court to address the broader question of whether the imposition of polygraph testing offends a participant's Fifth Amendment privilege against self-incrimination. Mr. Nagel contends it does and the condition ought to be removed in its entirety.

Recently, the Seventh Circuit issued an opinion in *Lacy v. Butts*, 922 F.3d 371 (7th Cir. April 25, 2019), affirming the lower court ruling that part of Indiana's Sex Offender Management and Monitoring program violates the Constitution. The Court determined that the program compelled inmates "to be a witness against themselves" contrary to the Fifth Amendment, by requiring convicted sex offenders to confess to their crimes while truthfully participating in sex offender treatment, which often included polygraph examinations. If a program counselor believed that a participant was deceptive or less than forthcoming in filling out a sex offender questionnaire or in therapy, a polygraph test could be ordered. That prompted the participant to supply a detailed sex history questionnaire. If it was deemed the participant was being deceptive or untruthful, sanctions in the form of disciplinary violations could apply with the loss of good

---

[1] Mr. Nagel agreed to the polygraph with the recording conditions; however, the polygrapher would not accept Mr. Nagel's signature which included "All Rights Reserved" and "Under Duress." (Pretrial Rprt, 6/4/19 at 5).

2

time credits and demotions in credit class for failure to abide by the program's requirements. No immunity was provided to the participant. *Id.* at 373-374.

The order to partake in a polygraph, is likewise, compelling Mr. Nagel to be a witness against himself, contrary to the Fifth Amendment and the Seventh Circuit law in *Lacey*. If Indiana's sex offender program violates the Fifth Amendment by withholding good time credit reductions, then it follows that supervised release violations, leading to revocations and possible reimprisonment would most certainly cross that line. [2] A threat to revoke one's probation/supervised release for properly invoking his Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose. *United States. v. Von Behren,* 822 F.3d 1139, 1150 (10th Cir 2016).

There is no doubt that the polygraph testing in the instant case compels Mr. Nagel to be a witness against himself, under the threat of revocation, thus violating the Fifth Amendment. During some of his pretest interviews, Mr. Nagel has been asked the following questions as to whether he:

1. "Had sexual contact with minors;
2. Been alone with minors or had unauthorized contact with minors;
3. Viewed pornography;
4. Used any electronic device to access the Internet without authorization;
5. Consumed alcohol;
6. Used Illegal drugs;
7. Left the state without permission;
8. Loitered in public places, e.g. schools, bus stops, parks, forest preserves, playgrounds, or other places where children congregate;
9. Possessed weapons;
10. Associated with felons (other than at group therapy sessions);

---

[2] At this point, Mr. Nagel has been reported by the probation department for his failure to agree to be recorded during the polygraph testing, and thus not participating in the required polygraph testing. The sanctions requested are revocation and 6 months imprisonment. (Pretrial Rprt, 6/4/19 at 6)

3

  11. Patronized strip clubs, adult bookstores, massage parlors, or prostitutes;
  12. Had any contact with law enforcement;
  13. Engaged in exhibitionism or voyeurism."

 Polygraph Rprt at 4-5 (pdf numbered). [3]

Plainly many of the above questions, could elicit answers that incriminate Mr. Nagel or any participant. In addition, actual questions posed during several of the Mr. Nagel's polygraph tests were geared specifically to illicit conduct. They were:

  1. Since your last polygraph, have you had physical sexual contact with any minors?
  2. Since April 17, 2018, have you had any physical sexual contact with a minor?

 *Id.* at 5.

Mr. Nagel has also been asked the following questions during an examination that clearly presented with the threat of incrimination:

  1. From age 25 to present, did you ever have physical sexual contact with a minor?
  2. Other than your victim, as an adult, did you ever have online sexual interactions with a minor?
  3. Besides that one time, did you ever travel to meet a minor for sexual purposes?
  4. Did you ever purposely view any child pornography?

 *Id*. at 20.

Affirmative answers to these questions are pertinent to crimes beyond those of conviction. The disclosures could trigger an investigation. Asking a participant to describe past sexual offenses risks self-incrimination that is neither remote nor speculative. See *Lacy v. Butts*, 922 F.3d at 376. See also *United States v. Antelope*, 395 Fd.3d 1128 (9th Cir 2005)("The treatment

---

[3] This information is derived from documents-polygraph reports-received from probation by both the government and the defense, as a result of order of court. They are not typically part of the record and should not be. Counsel will provide copies to the Court, if needed.

condition placed Antelope at a crossroads—comply and incriminate himself or invoke his right against self-incrimination and be sent to prison. We therefore conclude that Antelope's successful participation in SABER triggered a real danger of self-incrimination, not simply a remote or speculative threat.").

Even before *Lacey* was decided in 2019, the Tenth Circuit Court of Appeals in *United States. v. Von Behren,* 822 F.3d 1139 (10th Cir 2016) found that a defendant faced dangers of self-incrimination if he was required to answer certain questions on a polygraph test. The mandatory questions on Von Behren's test were of a kind similar to Mr. Nagel's. He was asked:

1. After age of 18, did you engage in sexual activity with anyone underage of 15?
2. Have you ever physically forced or threatened anyone to engage in sexual contact with you?
3. Have you ever had sexual contact with someone who was physically asleep or unconscious?
4. Have you ever had sexual contact with a family member or relative?

*Id*. at 1143, 1145.

The Tenth Circuit found that an affirmative answer to any of these questions would trigger Fifth Amendment protection as it could provide a link in the chain of evidence needed to prosecute the speaker, citing *United States v. Powe*, 591 F.2d 833, 845 n 36 (D.C. Cir. 1978). *Id*. at 1145. See also *Hoffman v. United States*, 341 U.S. 479 (1951).

Mr. Nagel requests that due to the protections conferred upon both the innocent and the guilty under the Fifth Amendment, that the condition that he submit to polygraph examinations be eliminated. See *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) ("We have emphasized that one of the Fifth Amendment's "basic functions ... is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.' " *Grunewald v. United*

5

*States,* 353 U.S. 391, 421, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (quoting *Slochower v. Board of Higher Ed. of New York City,* 350 U.S. 551, 557–558, 76 S.Ct. 637, 100 L.Ed. 692 (1956)) (emphasis in original). In *Grunewald,* we recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. 353 U.S. at 421–422, 77 S.Ct. 963."). Mr. Nagel believes the probation officer Jay Nichols is not objecting to the elimination of this condition.

**Sex Offender Treatment/Counseling**

Just as the polygraph testing threatens Mr. Nagel's Fifth Amendment privilege, so does the sex offender treatment in the form of therapy. When Mr. Nagel is expected to discuss his past and current sexual conduct, as in sex offender treatment, the Fifth Amendment privilege is activated. The moment a defendant is compelled to give statements which might incriminate him in criminal proceedings, even if such proceedings have yet to be initiated, he has the right to invoke.

Mr. Nagel has been cited by the probation officer in his June 4, 2019 report at page 6 for "refusing to discuss his personal life" with the therapist. Although, Mr. Nagel is not claiming to have violated any laws, any broad discussion of one's personal life may reveal past transgressions, to which the participant cannot be compelled to answer. If therapy

consists of discussions in areas that fall within the protections of the Fifth Amendment, it should cease.[4]

Respectfully submitted,

/S/Ellen R. Domph

Ellen R. Domph
53 W. Jackson Blvd., #1544
Chicago, IL 60604
312-922-2525
edomph@gmail.com

---

[4] In addition, therapists are mandated reporters which put any participant at risk if required to discuss past transgressions. Such "treatment modes" would clearly violate the Fifth Amendment.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant's **MOTION** was served on October 15, 2019 in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/Ellen R. Domph